58  163
24a 557
26a 204
58  163
133 204

ELIZABETH W. MASON

*v.*

WILLIAM AINSWORTH.

1. POWER OF SALE IN A MORTGAGE—*whether it may be executed by an assignee.* When a mortgage contains a power of sale, to be executed by the mortgagee, his heirs or assigns, and the debt secured thereby is of a character assignable by law, an assignee of the debt may execute the power of sale contained in the mortgage.

2. But where the debt is not evidenced by any of the instruments assignable by law, but only by the mortgage itself, which is not assignable

except in equity, then the mere assignment of the mortgage will pass to the assignee only an equitable title to the debt, and in such case the power of sale in the mortgage does not pass to the assignee, and can be executed only by the mortgagee himself.

APPEAL from the Circuit Court of Mason county; the Hon. CHARLES TURNER, Judge, presiding.

Messrs. LACEY & WALLACE, for the appellant.

Mr. LUTHER DEARBORN, and Messrs. BROADWELL & SPRINGER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Both parties claim title to the land in controversy, from Darius L. Ball. In August, 1854, Ball and wife conveyed the premises by warranty deed to Reuben Hankinson, and on the 6th day of November, 1858, Hankinson and wife, by warranty deed, conveyed the same premises to the appellant.

The appellee relies on a title derived under a mortgage executed by Ball and wife to Alonson Reed, on the 14th day of December, 1853. This mortgage was given to secure an indebtedness of $110, due from the mortgagor to the mortgagee, but it does not appear that the indebtedness was evidenced by any note or bond, or other obligation outside of the mortgage itself. The mortgage contained a power of sale which, in effect, authorized the mortgagee, his heirs and assigns, in default of payment, to sell the mortgaged premises, and upon making such sale, to execute a sufficient conveyance to the purchaser.

In April, 1854, Reed, by his writing on the back of the mortgage, assigned all his "right, title and interest" therein, to Jeremiah B. Watson, and constituted Watson his attorney, in his name or otherwise, "to take all legal measures" to complete the collection of the mortgage indebtedness.

By a like indorsement, Watson subsequently assigned and delivered the mortgage to Franklin Johnson and Ira B. Shepardson.

In 1859, Johnson and Shepardson, by an instrument in writing attached to the mortgage, in substance the same as the other assignments, assigned their interest in the mortgage and the debt secured thereby, to Jacob F. Coppel, and delivered the same to him with a guaranty that the same was a good and valid mortgage.

It does not appear that the mortgage indebtedness, or any part thereof, was ever paid to the mortgagee or to either of the assignees.

In 1860, Jacob F. Coppel, in pursuance of the power supposed to have been conferred on him as assignee, undertook to foreclose the equity of redemption of the original mortgagor and those claiming under him, by a sale by virtue of a clause in the mortgage which conferred that power, and at a sale previously advertised, did, on the 13th day of February, 1860, sell the mortgaged premises to Luther Dearborn, the grantor of the appellee, and executed to him a deed purporting to convey, absolutely, the title of Ball to the land in controversy.

The only question that arises on this record, that we deem material to be considered, is, whether the power of sale contained in the mortgage has been properly exercised by a party authorized by law to execute it.

Neither the debt secured, nor the mortgage itself, was assignable at common law, nor have they been made assignable by any statute of this State. Only a certain class of choses in action, such as notes, bonds, bills, and other instruments in writing, for the payment of a specific sum of money, or articles of personal property, are assignable by the terms of our statute. In equity, the assignment of the debt will carry with it the mortgage, which is only regarded as an incident to the debt thereby secured. Even an equitable assignment of the debt will authorize the holder to institute proceedings in his own name to foreclose the mortgage, and make available the security. *Olds* v. *Cummings*, 31 Ill. 188.

Mortgages to secure indebtedness have never been regarded as assignable, in the sense of negotiable paper, so as to vest the

legal title in the assignee. That class of securities is not within the meaning of the statute making certain choses in action assignable. The exact position of Coppel, in regard to the mortgage indebtedness, was that of the equitable owner, the legal title still remaining in the original mortgagee. We can not regard the several assignments as operating to divest him of the legal title, and as vesting the same in Coppel. The inquiry, then, arises, can an equitable owner of a debt, secured by a mortgage containing a power of sale, execute that power so as to effectually bar the equity of redemption of the mortgagor, and pass the title to the premises to the purchaser?

The rule is settled, at least in this State, that such a power of sale must be executed by the original mortgagee, or in case the debt is of such a character that it may be legally assigned, so as to vest the legal title in the assignee, then the assignee himself must execute the power. This is the doctrine of *Pardee* v. *Lindley*, 31 Ill. 174, and the rule there stated was affirmed in this court, in *Strother* v. *Law*, 54 ib. 413. We are not inclined to extend the rule adopted in those cases, any farther. The case under consideration does not come within the rule established in either of those cases. There, the assignee was the legal holder of the indebtedness secured by the mortgage, and that fact carried with it the mortgage as a mere incident, and the assignee was held to be the proper party to execute the power. But not so in this case. Coppel was only the equitable holder of the mortgage indebtedness, and it would be extending the rule quite too far to hold that a mere equitable assignee could execute the power of sale contained in the mortgage, by which the debt is secured. We are not familiar with any principle of law, or any well considered case, that extends the rule to that extent. Sales of this character have never been regarded with any great favor, and the courts have always required great strictness in the execution of the power. It is only from the necessity that was found to exist, to make this class of securities effective and available, that the assignee, holding the legal title, was deemed to be vested with the right

to execute the power in his own name.    We find the doctrine that permits the legal assignee to make the sale in his own name, to be supported on principle and authority, but no such rule, so far as we know, has ever been held to apply to a mere equitable owner of a debt, secured by a mortgage.    *Hamilton* v. *Lubukee*, 51 Ill. 415.

We can not regard the several assignments as having vested the legal title to the mortgage, and the indebtedness thereby secured, in Coppel, so as to have authorized him to execute the power in his own name.    He was only the equitable owner, and the legal title still remained in the original mortgagee, Reed, and under the rule in *Pardee* v. *Lindley*, Reed was the only party who could properly execute the power of sale.    The equitable assignment of the debt conferred no such power on Coppel.

We think the court erred in holding that the deed of the assignee, Coppel, conveyed the title in the land to Dearborn, the grantor of the appellee.    The power was not executed by a party authorized by law to do so, and the deed of the assignee must be held not to have passed the title.

Under this view of the law, the finding of the court was erroneous, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*